THE HONORABLE THOMAS S. ZILLY

IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

SHANNON and SCOTT RANEY.

Plaintiff,

vs.

GREEN TREE SERVICING LLC, et al.,

Defendants.

NO. 2:14-cv-01937-TSZ

**PLAINTIFF SHANNON AND SCOTT RANEY'S SUPPLEMENTAL BRIEF**

NOTE ON MOTION CALENDAR:
MARCH 3, 2016

## I. INTRODUCTION

This supplemental brief is filed on behalf of Plaintiff Scott and Shannon Raney in response to the request by this Court to further address outstanding questions.

## **FTC ORDER**

Plaintiffs concede that the FTC Order, as a consent decree, does not create a private cause of action for Plaintiffs. As such, the Order as an enforceable judgment as between the Raneys and Green Tree would not be afforded full faith and credit. *See Blue Chip Stamps v. Manor Drug Stores*, 421 U.S. 723, 750, 95 S. Ct. 1917, 44 L.Ed. 2d 539 (1975). The Full Faith and Credit Clause provides a means for ending litigation by putting to rest matters

Plaintiff's Supplemental Brief- 1

Vondra Law Firm, PLLC
10675 Willows Rd NE, Ste 250
REDMOND, WASHINGTON 98052
(425) 629-6398
FAX (425) 999-4875

previously decided *between adverse parties* in any state or territory of the United States. *In re Estate of Tolson,* 89 Wash. App. 21, 29, 947 P.2d 1242 (1997)(emphasis added). This means that even if Defendants violated the order, the Plaintiffs, as a non-party (even if an intended beneficiary), would not be able to sue on that basis alone. See *Andre v. Bank of America, N.A., No. 5:14-cv-02888-PSG, 2014 U.S. Dist. LEXIS 16878, 2014 WL 6895240, at *4 (N.D. Cal. Dec. 5, 2014).* Thus, Plaintiffs do not contend that Defendant's breach of the consent order gives them a private right of action.

That being said, however, Plaintiffs do contend that the FTC Order establishes a pattern and practice that persisted by Defendants to satisfy the public interest prong of the Washington State Consumer Protection Act ("CPA"). Washington courts have found that the public interest element of a CPA claim can be established by showing that an entity has engaged in similar conduct affecting other homeowners/borrowers. *See Bain v. Metro Mortgage Group, Inc.* 285 P.3d 34 at 51, (Wash. 2012). The FTC Order and Complaint alleged that Green Tree repeatedly refused to honor loan modifications offered by prior servicers. *See FTC Order,* Page 35-36. The Plaintiffs also allege that Green Tree's failure to honor their loan modification is not solely limited to their loan, but to other consumers as well. The FTC Order clearly evidences this past behavior by Green Tree.

## **COLLATERAL ESTOPPEL**

Green Tree, as a party in the FTC Order, is estopped from now denying that the loan modification executed by Plaintiffs in December 2013 was effective and binding on Green Tree when it began servicing the loan in January 2014. This is an instance of offensive collateral estoppel - "a version of the doctrine [of collateral estoppel] that arises when a plaintiff seeks to estop a defendant from relitigating the issue when the defendant previously

Plaintiff's Supplemental Brief- 2

litigated and lost against another plaintiff." *Collins v Dr Horton Inc.,* 505 F.3d 874 (9th Cir. 2007) citing *Parkland Hosiery Co.,* 439 U.S. at 326, 99 S.Ct. 645. Courts have determined that the prerequisites for offensive non-mutual collateral estoppel are whether "(1) there was a full and fair opportunity to litigate the identical issue in the prior action; (2) the issue was actually litigated in the prior action; (3) the issue was decided in a final judgment; and (4) the party against whom [collateral estoppel] is asserted was a party or in privity with a party in the prior action." *Syverson v. IBM,* 472 F.3d 1072, 1078 (9th Cir. 2007).

### *There was a Full and Fair Opportunity to Litigate*

The determination of whether a consent decree satisfies the first prong turns on the intent of the parties. If the parties to a consent decree "indicated clearly the intention that the decree to be entered shall not only terminate the litigation of claims, but, also determine finally certain issues, then their intention should be effectuated. *US v. Sherwin-Williams Co.,* 165 F.Supp. 2d 797 (C.D. Ill. 2001), citing *Kaspar Wire Works,* 575 F.2d at 539. Therefore, when determining the effect to be given a consent decree, the Court considers the parties' intentions with respect to the finality to be accorded the decree as reflected in the record and the language of the agreement. *Kaspar,* 575 F.2d at 539-40. *See* also *Green v Ancora-Cintronelle Corp*.**, 577** F.2d 1380, (9th Cir. 1978) ("The fact that this judgment was the result of the parties' stipulation of settlement does not detract from its being considered a conclusive determination of the merits of that action for purposes of collateral estoppel where, as here, it is clear that the parties intended the stipulation of settlement and jugement entered thereon to adjudicate once and for all the issues raised in that action."). A stipulated or consent judgment, like a contract, must be construed to determine its effect in light of all the circumstances. *Hartley v. Mentor Corp.,* 869 F.2d 1469 (Fed. Cir. 1989) *citing* 18

Plaintiff's Supplemental Brief- 3

Vondra Law Firm, PLLC
10675 Willows Rd NE, Ste 250
REDMOND, WASHINGTON 98052
(425) 629-6398
FAX (425) 999-4875

C.Wright, A. Miller & E. Cooper, *Federal Practice and Procedure: Jurisdiction, §4443 at 383.* A consent decree may be conclusive if the parties have clearly indicated the intent to give a consent decree conclusive effect. *Sherman,* 165 F.Supp.2d 797at 804.

In the instant case, the intent of the parties can be easily determined. To determine intent, "focus on the objective manifestations of the agreement, rather than on the unexpressed subjective intent of the parties." *Hearst Communications v. Seattle Times Co.,* 115 P.3d 262 (Wash. 2005) citing *Max L. Wells Trust v. Grand Cent. Sauna Hot Tub Co. of Seattle,* 62 Wash. App. 593, 602, 815 P.2d 284 (1991). Thus, when interpreting contracts, the subjective intent of the parties is generally irrelevant if the intent can by determined from the actual words used. *Id* citing *City of Everett v. Estate of Sumstad,* 95 Wash. 2d 853, 855, 631 P2d 366 (1981). Yet, "extrinsic evidence is admissible as to the entire circumstances under which the contract was made, as an aid in ascertaining the parties' intent." *Berg v. Hudesman,* 801 P.2d 222, (Wash. 1990). Further, "parol evidence is admissible to show the situation of the parties and the circumstances under which a written instrument was executed, for the purpose of ascertaining the intention of the parties and properly construing the writing." *Id.* at 669 citing *J.W. Seavey Hop Corp. v. Pollock,* 20 Wn.2d 337, 348-349, 147 P.2d 310 (1944).

Looking at the FTC Order itself can help with the determination of the parties' intent:

"All parties waive all rights to appeal or otherwise challenge or contest the validity of this Order. Defendant further waives and releases any claim it may have against the Commission or the Bureau, and their employees, representatives, or agents." Pg. 2

"The Plaintiffs and Defendant, by and through their counsel, have agreed that entry of this Order resolves all matters in dispute between them arising from the facts and circumstances alleged in the Complaint in this action that have taken place as of the Effective Date, except that the Bureau specifically reserves and does not release any

Plaintiff's Supplemental Brief- 4

liability assign under any provision of the Bureau's rules relating to mortgage servicing (12 C.F.R. 1024.30, *et seq*) as of January 10, 2014." Pg. 3

"The facts alleged in the Complaint will be taken as true, *without further proof*, in any subsequent civil litigation by or on behalf of the Commission or Bureau in a proceeding to enforce its rights to any payment or monetary judgment pursuant to this Order." Pg. 12. Emphasis added.

However, to demonstrate the binding nature of this Order on Defendants in this instant case, it is imperative to look at the Complaint filed by the FTC to determine if the Raney's issue is considered to be fully litigated. The FTC Complaint alleges, among other things:

> "In numerous instances, in connection with servicing mortgage loans, Green Tree has unilaterally breached contracts that consumers negotiated with the prior servicers of their loans by not honoring In-Process Loan Modifications that consumers had obtained from their prior servicers." *FTC Complaint,* Paragraph 100. (Complaint available at https://www.ftc.gov/system/files/documents/cases/150421greentreecomplaint.pdf)

Thus, looking at the FTC Order and the Complaint together show that the intent of the parties was to prevent Defendants from denying that any prior loan modifications in effect upon transfer were not binding on Defendants and therefore, a fully litigated issue. The Order itself forces Defendants to "promptly send a permanent modification agreement to Affected Consumers [consumers with residential loans transferred to Defendant between January 1, 2010 and November 2014] with In-Process Loan Modifications that were fully underwritten prior to the trial period and received all necessary investor approvals but for which the consumer did not previously enter a permanent modification agreement." *FTC Order,* Pg. 35-36.

***The Issue was Actually Litigated in the Prior Action***

Plaintiff's Supplemental Brief- 5

A consent decree cannot fulfill the "actually litigated" requirement of collateral estoppel if there is reason to doubt the extensiveness or fairness of procedures following in prior litigation. *US v. Sherwin Williams*, 165 F. Supp 2d at 804. Nevertheless, when collateral estoppel depends in part on a consent decree, the "actually litigated" element is satisfied where the parties have clearly indicated their intention that the consent decree resolve the issue. *Id.* For all the reasons stated above for the first factor, the intent of the parties in the FTC Order was clearly to resolve the issue.

### *The Issue was Decided in a Final Judgment*

A consent decree is a judgment, has the force of res judicata, and it may be enforced by judicial sanctions. *SEC v. Randolph,* 736 F.2d 525, Ct of Appeals (9th Cir. 1984). It is an agreement of the parties as an injunctive order of the court, signed by the judge, and entered as the judgment of the court. It can hardly be argued that the FTC Order is not a final judgment for purposes of collateral estoppel.

### *Green Tree was a Party in the Prior Action*

The final factor is whether Green Tree was a party or in privity with a party in the prior action. Green Tree was a named defendant in the FTC Order. As such, no further briefing on this factor is needed.

### **Trial Courts Have Broad Discretion**

It is true that courts have ruled that "even when traditional perquisites [as listed above] are satisfied, trial courts have broad discretion to decide whether to apply offensive non-mutual collateral estoppel. *Collins v. DR Horton, Inc.*, 505 F.3d 874 at 882 (9th Cir. 2007) citing *Parklane Hosiery Co., Inc.,* 439 U.S. at 331, 99 S.Ct. 645, 58 L.Ed.2d 552. The

Plaintiff's Supplemental Brief- 6

court in *Parklane Hosiery* listed multiple factors[1] that can be used to determine if offensive collateral is warranted, but expressly held: "The general rule should be that in cases where a plaintiff could easily have joined in the earlier action or where, either for the reasons discussed above [see footnote 1] or for other reasons, the application of offensive estoppel would be unfair to a defendant, a trial judge should not allow the use of offensive collateral estoppel. *Id.* at 331, 99 S. Ct. 645. It further writes "We have concluded that the preferable approach for dealing with these problems in the federal courts is not to preclude the use of offensive collateral estoppel, but to grant trial courts broad discretion to determine when it should be applied. *Id.* at 331.

The circumstances in *Parklane* consist of remarkable similarities to this case as it also involved a private citizen bringing action against a corporate defendant following a judgment entered in favor of the SEC, a government agency. As the court stated:

> "In the present case, however, none of the circumstances that might justify reluctance to allow the offensive use of collateral estoppel is present. The application of offensive collateral estoppel will not here reward a private plaintiff who could have joined in the previous action, since the respondent probably could not have joined in the injunctive action brought by the SEC even had he so desired. Similarly, there is no unfairness to the petitioners in applying offensive collateral estoppel in this case. First, in light of the serious allegations made in the SEC's complaint against the petitioners, as well as the foreseeability of subsequent private suits that typically follow a successful Government judgment, the petitioners had every incentive to litigate the SEC lawsuit fully and vigorously. Second, the judgment in the SEC action was not inconsistent with any previous decision. Finally , there will in the respondent's action be no procedural opportunities available to the petitioners that were unavailable in the first action of a kind that might be likely to cause a different result." *Id.* at 332.

---

[1] Factors listed in *Parklane* include: (1) judicial economy; (2) unfairness to defendant if little incentive to litigate in the prior action, (3) if judgment relied on is inconsistent with one for more previous judgments in favor of defendant, (4) if second action affords defendant procedural opportunities not available in first action. *See Parklane Hosiery Co* at 326-331.

Plaintiff's Supplemental Brief- 7

Vondra Law Firm, PLLC
10675 Willows Rd NE, Ste 250
REDMOND, WASHINGTON 98052
(425) 629-6398
FAX (425) 999-4875

This case is in line with Clearly, the Raneys, as private citizens, could not have joined the earlier action with the FTC. Green Tree also had great incentive to litigate with the FTC had they believed the allegations were false. Green Tree had all procedural opportunities available to it in its defense.

In light of these factors, Green Tree should be collaterally estopped from now denying that the Flagstar loan modifcation was binding on them upon the transfer of servicing. Green Tree tries to argue that they do not have to honor the loan modification from Flagstar even though it was in-process at the time of the servicing transfer. This is clearly inapposite to the consent order in which Green Tree themselves agreed. The entry of the FTC Order deemed that these prior practices of the Defendant were improper, deceptive, and unfair. Green Tree cannot now argue that Flagstar's loan modification with the Raneys' is not binding upon them as the Raneys' current servicer.

**FLAGSTAR'S DEED OF TRUST**

The parties do not challenge the validity of the Deed of Trust in this matter or Flagstar's authority to offer a loan modification to Plaintiffs. As such, this issue is not before the court. Nevertheless, the Plaintiffs will address the court's concerns briefly:

**The Deed of Trust and Defendant's Interests in it are Valid**

Although, Flagstar held dual positions of beneficiary and trustee of the Plaintiff's Deed of Trust for 10 months, in violation of RCW 61.24.020, this does not affect Plaintiff's claims against Defendant. Had Flagstar foreclosed during those 10 months, the trustee's deed would have been deemed void. Yet, this did not occur. The Plaintiff's do not question Flagstar's authority to offer a loan modification nor their ability to transfer servicing to Green Tree. Plaintiff cannot find any case law that would deem the offer of the loan modification to be

Plaintiff's Supplemental Brief- 8

Vondra Law Firm, PLLC
10675 Willows Rd NE, Ste 250
REDMOND, WASHINGTON 98052
(425) 629-6398
FAX (425) 999-4875

invalid solely based on a violation of the above statute. As such, Plaintiffs do not believe there to be any effect of this issue on the case at hand.

**<u>SUPPORT FOR PLAINTIFF'S BREACH OF CONTRACT CLAIM</u>**

The courts looks to different standards of analysis depending on the motion being requested. A Rule 12(b)(6) motion to dismiss survives if the complaint pleads "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal,* 129 S. Ct. 1937, 1949 (2009). Under this rule, "all allegations of material facts are taken as true and construed in the light most favorable to the nonmoving party." *Smith v. Jackson,* 84 F.3d 1213, 1217 (9th Cir. 1996).

Summary judgment, on the other hand, is proper where all the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue of material fact and that the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). In ruling on a motion for summary judgment, evidence must be viewed in light most favorable to the non-moving party, and all justifiable inferences are to be drawn in the nonmovant's favor. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 255 (1986). To refute such a showing, the non-moving party must present some significant, probative evidence indicating the necessity of a trial for resolving a material factual dispute. *Celotex Corp v. Catrett,* 477 U.S. 317, 323 (1986).

The Court questions whether *Corvello v Wells Fargo Bank, NA,* 728 F.3d 878 (9th Cir. 2013), a reversal of a Rule 12(b)(6) motion, and *Steadman v. Green Tree Servicing, LLC,* 2015 WL 2085565 (W.D. Wash. May 5, 2015), a denial in relevant part of summary judgment motion can be used as support for a grant of Plaintiff's summary judgment motion.

Plaintiff's Supplemental Brief- 9

Vondra Law Firm, PLLC
10675 Willows Rd NE, Ste 250
REDMOND, WASHINGTON 98052
(425) 629-6398
FAX (425) 999-4875

Plaintiffs assert that it can and even if it cannot, there is no genuine issue of material fact as to whether Plaintiffs and Green Tree had a valid and binding contract.

The court in *Corvello* reversed a 12(b)(6) ruling by finding that Wells Fargo was contractually obligated under the terms of the temporary loan modification to make the agreement permanent to borrowers that complied with the terms of that agreement. *Corvello* at 880. The court reversed the 12(b)(6) ruling and remanded it. This is the same conclusion with almost identical facts that was reached in *Wigod v Wells Fargo Bank, N.A.,* 673 F.3d 547 (7th Cir. 2012) in a 12(b)(6) motion as well. Although the standard is heightened in a summary judgment motion, the Plaintiff's case is not only distinguishable from these two cases, but stronger. Plaintiffs fully performed their end of the contract. There was nothing left for the Plaintiffs to do except wait for Defendants to execute. Thus, the fact that these cases survived a 12(b)(6) motion shows that had the courts been faced with the facts in the Raney's case in a summary judgment motion, a breach of contract would be the only conclusion.

In fact, Plaintiff asserts that one only needs to look at the elements of contract law that Washington state follows to see that a clear breach occurred by Defendants. For a contract to form, the parties must objectively manifest their mutual assent. *Keystone Land & Development Co. v Xerox Corp,* 94 P.3d 945, Wash Sup. Ct (2004) citing *Yakima County Fire Prot. Dist. No. 12 v. City of Yakima,* 122 Wash. 2d 371, 388, 858 P.2d 245 (1993). Moreover the terms assented to must be sufficiently definite. *Id* citing *Sandeman v. Sayres,* 50 Wash.2d 539, at 541, 314 P.2d 428 (1957). Mutual assent is normally a question of fact for the jury. *Keystone Land* at n. 10. However, a question of fact may be determined as a matter of law where reasonable minds could reach but one conclusion. *Id.* Additionally, the

Plaintiff's Supplemental Brief- 10

Vondra Law Firm, PLLC
10675 Willows Rd NE, Ste 250
REDMOND, WASHINGTON 98052
(425) 629-6398
FAX (425) 999-4875

contract must be supported by consideration to be enforceable. *Id* citing *King v. Riveland,* 125 Wash. 2d 500, 505, 886 P.2d 160 (1994).

That being said, the law recognizes two kinds of contracts: bilateral and unilateral. *Cook v. Johnson,* 37 Wn.2d 19, 23, 221 P.2d 525 (1950). The essential distinction between a bilateral and a unilateral contract is the method of acceptance. *Multicare Med. Ctr. v. DSHS,* 114 Wn.2d 572, 584, 790 P.2d 124 (1990*).* In a unilateral contract, the offer or promise of the one party does not does not become binding or enforceable until there is performance by the other party, whereas, [in a bilateral contract], it is not performance which makes the contract binding, but rather the giving of a promise by the one party for the promise of the other. *Id.* In other words, under a unilateral contract, an offer cannot be accepted by promising to perform; rather, the offeree must accept, if at all, by performance, and the contract then becomes executed. *Id.* For purposes of a unilateral contract, "consideration consists of the offeree performing the requisite terms of the offer." *Id* at 584.

In a typical loan modification case, such as in *Corvello* and *Steadman,* the contract at issue did not hold the elements of an executed unilateral contract. In each case, the borrowers had submitted trial loan payments, but had not received the permanent loan modification paperwork to sign from the lender. In contrast, the Raneys not only completed all their trial loan payments, but had even **signed, notarized, and returned** the permanent loan modification contract. There was literally nothing else the Plaintiffs needed to do on their end to fulfill their end of the deal. The Plaintiffs had performed the consideration and upon signing and returning the permanent loan modification contract, the contract is deemed executed. For Defendants to not honor the contract is a breach. There is no genuine issue of

Plaintiff's Supplemental Brief- 11

material fact and it is clear that the Raneys are entitled to summary judgment on their breach of contract claim.

DATED this 22nd day of February 2017.

/s/ Adria Vondra
Adria Vondra                WSBA #40883
Attorney for Plaintiff
Vondra Law Firm, PLLC
10675 Willows Rd NE, Ste 250
Redmond, WA 98052
(425) 629-6398

Plaintiff's Supplemental Brief- 12

# CERTIFICATE OF SERVICE

I, Adria Vondra, hereby certify that on February 22, 2017, I electronically filed the foregoing with the Clerk of the Court using CM/ECF system which will send notification of such filing to the following:

    William G. Fig, WSBA #33943
    Email: wfig@sussmanshank.com
    SUSSMAN SHANK LLP
    1000 SW Broadway, Suite 1400
    Portland, Oregon 97205
    Telephone: (503) 227-1111
    Facsimile: (503) 248-0130

*Attorney for Defendant Green Tree Servicing LLC*

DATED this 22nd day of February 2017

                  VONDRA LAW FIRM, PLLC

                  By: */s/Adria Vondra*
                  Adria Vondra, WSBA No. 40883
                  Attorney for Plaintiffs
                  10675 Willows Road NE, Ste 250
                  Redmond, WA 98052
                  Phone: (425) 629-6398
                  Facsimile: (425) 999-4875
                  Email: avondra@vondralawfirm.com

Plaintiff's Supplemental Brief- 13